**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 25-1465

_____

UNITED STATES OF AMERICA

v.

DELRICO CLYBURN,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:18-cr-00152-023)
District Judge: Honorable Arthur J. Schwab

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 27, 2026

Before: HARDIMAN, SCIRICA,* and AMBRO, *Circuit Judges*.

(Filed: August 6, 2026)

_____

OPINION**

_____

---

\* The Honorable Anthony J. Scirica was unavailable to participate in the decision in this case after submission to the merits panel.  This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and 3d Cir. I.O.P. 12.1(b).

\** This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Delrico Clyburn appeals the District Court's judgment revoking his supervised release and imposing sentence. For the following reasons, we will affirm.

I.

Following his conviction for conspiracy to distribute heroin in violation of 21 U.S.C. § 846, Clyburn was sentenced to 24 months' imprisonment followed by six years of supervised release. In 2020, he began his term of supervised release. On August 20, 2024, Ebony Murphy called police saying her boyfriend, Clyburn, had stolen her firearm. Pittsburgh Police Officer James Pace was dispatched to a residence in Pittsburgh's Homewood neighborhood. Upon arrival, Murphy directed officers toward a house, stating that Clyburn had run in that direction.

While police continued to arrive on scene, Murphy told officers Clyburn punched her in the face during an argument, ripped her fanny pack off her body, dragged her to the ground, and took her gun and phone. Police could not find Clyburn. A SWAT team also arrived but could not find him. Murphy then filled out a domestic violence questionnaire for police and continued claiming Clyburn stole her firearm. Two days after the 911 call, Murphy recanted her statements and said she had found her gun in her car, though the interviewing detective noted "inconsistencies" in her revised story. SAppx20.

Clyburn was charged with state crimes, and a warrant was issued for his arrest. Clyburn did not turn himself in after a phone conversation with his Probation Officer. The Probation Office filed a petition to revoke his release, and the District Court issued an additional arrest warrant. Clyburn remained at large.

2

Six months later, in February 2025, officers encountered Clyburn while responding to another domestic incident with Murphy, who was screaming at officers when they arrived. Clyburn admitted he had an active warrant. Murphy told the police Clyburn had previously stolen her gun and had assaulted her just before they arrived.

Following his arrest, the District Court proceeded with the revocation petition. The initial petition alleged two violations: (1) the commission of a federal, state, or local crime; and (2) possession of a firearm. The Probation Officer filed an additional petition alleging a third violation: the commission of a crime during the February 2025 incident.

At a preliminary hearing, the Government presented testimony from Clyburn's probation officer, affidavits from law enforcement, and police reports. Clyburn's counsel objected to the introduction of this evidence as hearsay, but the Court overruled the objection. Clyburn testified he did not take Murphy's gun or phone but had torn open her fanny pack during an argument. Although Murphy was present at the hearing and Clyburn's counsel wanted to call her as a witness, Murphy told counsel she would invoke her Fifth Amendment right against self-incrimination. The magistrate judge found probable cause that Clyburn violated his conditions of supervised release and referred the matter to the District Court.

At the final revocation hearing, Clyburn's counsel continued to present hearsay objections. When the Government called her to testify, Murphy invoked her Fifth Amendment right against self-incrimination. The Government proceeded to present similar evidence from the preliminary hearing, including testimony from Officer Pace and his bodycam video. Clyburn made three hearsay objections to testimony and

3

evidence offered including: (1) Officer Pace's testimony about Murphy's statements at the 2024 incident; (2) Officer Pace's bodycam footage from the 2024 incident; and (3) Sgt. Chuberko's bodycam footage from the 2025 incident. The District Court overruled all three objections. Following Officer Pace's testimony, the judge noted, "[h]earsay is proper here, but I do want to say, having observed the video, his testimony, the objected to alleged hearsay was confirmed by what I saw on the video." Appx118.

The District Court found, by a preponderance of the evidence, that Clyburn had violated the conditions of his supervised release by committing another federal, state, or local crime, and possessing a firearm. It also noted the evidence was "overwhelming" and "[t]he video is realtime. It's dramatic, and she's confident in what she's saying." Appx131. The District Court continued, "[a]s to any hearsay that was on the record, as I said earlier, that hearsay is proper but in addition confirmed several times over and over again by the video." Id. The District Court sentenced Clyburn at the top of the Guidelines range, a 27-month prison term followed by three years of supervised release. The Court, speaking to Clyburn, said, "I believe a sentence at the high end of the guidelines is necessary … You don't seem to want to abandon your criminal activity. The videos are powerful of what occurred that night." Appx135.

Clyburn timely appealed. He contends: (1) the District Court erred by admitting hearsay statements in violation of his due process rights; (2) the Government failed to prove a violation of his supervised release conditions; and (3) the District Court committed procedural error in sentencing him.

4

II.[1]

A.

We begin by assessing whether the District Court abused its discretion in admitting hearsay statements at the revocation hearing.  The Fifth Amendment's Due Process Clause gives supervised releasees the "minimum requirements of due process," which include "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)."  Morrissey v. Brewer, 408 U.S. 471, 489 (1972).  Consistent with Rule 32.1(b)(2)(C) of the Federal Rules of Criminal Procedure, a district court is required to balance the supervised releasee's "interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it."  United States v. Lloyd, 566 F.3d 341, 345 (3d Cir. 2009) (citation omitted).  For the releasee's interest in confrontation, district courts evaluate "whether the proffered hearsay is sufficiently reliable."  United States v. Rose, 152 F.4th 153, 158 (3d Cir. 2025).  And "even where the out-of-court statements bear 'some indicia of reliability,' the Government must establish good cause for the declarant's nonappearance to outweigh the releasee's interest in confrontation."  Id. (citation omitted).

---

[1] The District Court had subject matter jurisdiction under 18 U.S.C. § § 3231 and 3583(e).  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  The admission of hearsay evidence at a supervised release revocation hearing is reviewed for abuse of discretion.  United States v. Rose, 152 F.4th 153, 158 (3d Cir. 2025).  We review factual determinations, including sufficiency of the evidence, for clear error and questions of law de novo.  United States v. Poellnitz, 372 F.3d 562, 565 n.6 (3d Cir. 2004); United States v. Maloney, 513 F.3d 350, 354 (3d Cir. 2008).

Murphy's statements contain significant indicia of reliability and were corroborated. Out-of-court statements that are "replete with detail" and "supported by corroborating evidence" are considered reliable. Id. at 158 (citation omitted). These include when victims of an assault describe an attack consistent with their physical injuries. *See* id. at 159 (finding a victim's statement that she was stabbed reliable because it was consistent with an officer's description of her injuries). Additionally, out-of-court statements made "while distressed from a recent violent attack adds another indicium of reliability." Id. at 160.

One of the officers here described Murphy as "frantic, highly upset, and injured." Appx105. Murphy told officers that she had been injured five minutes "prior to [officers'] arrival." Appx105. Both statements indicate distress from a recent violent attack. She also gave officers a description of the assault that Officer Pace observed was consistent with her injuries and property damage. Her statements were also corroborated by Clyburn's own admissions at the preliminary hearing. Courts have admitted hearsay evidence in "revocation proceedings when the out-of-court statements were bolstered by … the defendant's own admissions … ." Lloyd, 566 F.3d at 345 (citing Crawford v. Jackson, 323 F.3d 123, 130 (D.C. Cir. 2003)). At the preliminary hearing, Clyburn testified that he had ripped open Murphy's fanny pack during an argument. Though he disputes details of the assault, Clyburn's testimony corroborates the "altercation and its underlying circumstances." Crawford, 323 F.3d at 130.

Clyburn contends Murphy's subsequent actions diminish her statements' reliability. While Murphy did recant her statements two days after the incident, the

6

interviewing detective found "inconsistencies" in her story.  SAppx20.  And nearly six months later, she again told police that he had stolen her firearm, consistent with her original statement.  The inconsistencies in her recantation coupled with her later reaffirmation further support her initial statements' reliability.

The Government also provided good cause for Murphy's absence.  "Courts have recognized that a declarant's refusal to testify . . . may be good cause for [their] absence and justify the admission of hearsay."  Lloyd, 566 F.3d at 346.  Here, Murphy indicated her intention to invoke her Fifth Amendment right when called to testify.  In his brief, Clyburn recognizes, "[a] witness's invocation of her Fifth Amendment right against self-incrimination would typically constitute good cause sufficient to outweigh a weakened or average interest in confrontation."  Appellant's Br. at 27.  His only attempt to persuade the Court to depart from this general principle rests again on the reliability of Murphy's statements.  However, as described above, the District Court properly assessed the indicia of reliability regarding Murphy's statements.

Accordingly, the District Court did not abuse its discretion in concluding that Murphy's statements were reliable and therefore admissible.

B.

Clyburn next contends the Government did not provide sufficient evidence that he violated his supervised release conditions.  A district court may revoke supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3).  Clyburn asserts the Government has not met this standard because "the only evidence" submitted in this case was "Ms. Murphy's

7

uncorroborated statements to the police." Appellant's Br. at 29. As described in Section II.A., the officers' testimony of their observations of Murphy's injuries and property corroborated her statements. Besides, a single victim's statements, when corroborated, may be sufficient to revoke supervised release. See, e.g., Rose, 152 F.4th at 157 (supervised release revoked based on one victim's reliable out-of-court statements). As the District Court stated, Murphy's testimony was "confirmed several times over and over again by the video." Appx131. Accordingly, the District Court did not err in finding that Clyburn violated his conditions of supervised release.

## C.

Finally, Clyburn contends the District Court failed to explain its sentencing decision under the factors provided in 18 U.S.C. § 3553(a). Clyburn did not raise this argument in the District Court, so the procedural reasonableness of his sentence is subject to plain error review.[2]

District courts are required to "exercise[ ] [their] discretion through meaningful consideration to the § 3553(a) factors before deciding on a sentence." United States v. Merced, 603 F.3d 203, 215 (3d Cir. 2010) (citation modified). These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed … to protect the public from further

---

[2] "[W]hen a party wishes to take an appeal based on a procedural error at sentencing—such as the court's failure to meaningfully consider that party's arguments or to explain one or more aspects of the sentence imposed—that party must object to the procedural error complained of after sentence is imposed in order to avoid plain error review on appeal." United States v. Flores-Mejia, 759 F.3d 253, 255 (3d Cir. 2014) (en banc).

crimes of the defendant." 18 U.S.C. § 3553(a)(1)-(a)(2)(C). "[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." Rita v. United States, 551 U.S. 338, 356 (2007).

Here, the District Court imposed a sentence within the Guidelines range and demonstrated meaningful consideration of the factors in an explanation to the defendant:

> Sir, I believe a sentence at the high end of the guidelines is necessary. We've spent a lot of time together. You don't seem to want to abandon your criminal activity. The videos are powerful of what occurred that night.
>
> . . . . And even your conduct here today demonstrates that you do not yet understand the seriousness of your criminal conduct.
>
> So based upon all the time we've spent together and the evidence I heard today, I believe that this is an appropriate sentence, and I believe a term of supervised release is necessary afterwards to provide the guidance that you need and to protect the public from further crimes of this Defendant.
>
> I also believe that my sentence is sufficient but no greater than necessary to achieve the sentencing goals of rehabilitation, punishment, and deterrence.
>
> …
>
> Sir, I've spent a lot of time with you. You don't seem to get it yet. I think that's sad. I hope during the time of your incarceration you will reflect on your life and your need to change your behavior.
>
> Obviously, having a VI criminal history is substantial, but you're a young person relatively. So I would hope that, during the time you're there, that you'll get training in a skill, and you'll be able to become a productive citizen.

Appx135-36; 137-38.

The District Court considered the defendant's conduct during supervised release, the need to protect the public from future crimes, and his characteristics, including his criminal history and behavior at the sentencing hearing. Aside from merely reciting the factors,

9

the Court linked them to Clyburn's behavior and his prospects for future rehabilitation. Accordingly, the District Court did not commit plain error in explaining Clyburn's sentence.

Clyburn also claims the Court erred by considering the need to punish him for the underlying crime of conviction in violation of Esteras v. United States, 606 U.S. 185 (2025). In that case, the Supreme Court considered the list of factors a district court is permitted to consider at a supervised release revocation hearing under 18 U.S.C. § 3583(e)(3). Notably, that list does not include § 3553(a)(2)(A), which allows a district court to impose a sentence that reflects "the seriousness of the offense," promotes "respect for the law," and provides "just punishment for the offense." Esteras noted, "[i]n the context of the revocation hearing, the 'offense' is the underlying crime of conviction, not the violation of the supervised-release conditions." 606 U.S. at 193–94.

Clyburn asserts the District Court referred to the underlying conviction when it stated that: he did not "seem to want to abandon [his] criminal activity" (Appellant's Br. at 39 (citing Appx135)); he did not understand "the seriousness of [his] criminal conduct" (Appellant's Br. at 39 (citing Appx135)); and the sentence is "sufficient but no greater than necessary to achieve the sentencing goals of rehabilitation, punishment, and deterrence." (Appellant's Br. at 40 (citing Appx136)).

Clyburn's contentions fail for two reasons. First, Esteras concerned a district court's discretionary revocation of supervised release. 606 U.S. at 202. The Court declined to resolve whether its decision applies to mandatory revocations under 18 U.S.C. § 3583(g), so it does not control the analysis as to Clyburn's firearm violation. Id.

10

Second, Esteras took no position on whether § 3583(e)(3) precludes district courts from weighing factors "that sound in retribution *for the violation of the conditions of the supervised release*." Id. at 194 n.5 (emphasis in original). Here, the record does not indicate that the District Court was referencing the original offense in its explanation. In fact, the District Court explicitly mentioned the "powerful" evidence "of what occurred *that night*"—referring to the August 2024 incident. Appx135 (emphasis added). The District Court also referenced the goals of sentencing, "rehabilitation, punishment, and deterrence," with no mention of the need to further "punishment" for Clyburn's underlying conviction. Appx136. It permissibly mentioned his "conduct here today" as evidence that he did not understand "the seriousness of [his] criminal conduct," *i.e.*, the supervised released violations. Appx135. None of these statements violate the requirements of § 3583(e)(3), let alone rise to the level of plain error. Accordingly, the District Court did not plainly err when explaining its sentencing decision.

### III.

For those reasons, we will affirm.

11